## LEASES.

[Lucas Circuit Court, October 21, 1898.]

### ALFRED C. NEEL V. MARIA L. McCREERY.

1. SPECIFIC PERFORMANCE OF THE RENEWAL OF A LEASE MADE BY CORRESPONDENCE.

Where plaintiff leased of defendant property for a period of five years, the contract containing a provision for the privilege of five years more at the same rates, and the lessee elects to take it for the additional period, and subsequent correspondence between them shows a proposition for an additional term of ten years from the expiration of the five years, upon the same rates as contained in the existing lease, which was accepted, it was held that the word "rates" meant upon the same terms and conditions as were applicable to the former lease, unless modified by the parties, and hence the contract could not be considered as indefinite and indeterminate. There was an agreement that defendant should execute a lease, plaintiff was entitled to a decree for its specific performance.

2. NO DAMAGES FOR FAILURE OF LESSOR TO EXECUTE A LEASE, WHERE LESSEE HAS POSSESSION.

The lessee could have brought an action at any time after the contract for the renewal of the existing lease was made, to compel its execution. If he waits until the new lease is to take effect, he cannot then recover damages on the ground that not having a written lease to rely upon he is thereby prevented from contracting with other tenants to take part of the premises. Especially is this so if the lessor had given him possession of the entire premises.

KING, J.

This action comes into this court by appeal. Suit was brought in the court of common pleas to compel the defendant to execute to the plaintiff a lease upon certain premises under an agreement; as alleged in the petition—a contract. This allegation of the petition is denied in the answer. It is contended, also, that she never agreed to make a lease, but that, in addition to this, if such an agreement could be found from the evidence, that it is within the statute of frauds and could not be enforced, because not in writing, or if in writing, it is not definite and certain.

The contract in the case, if there is one, is a contract made by correspondence.

Neel v. McCreery.

In August, 1887, the plaintiff and his then partner, leased of the defendant one story of the premises in question, by a written lease that was duly executed by the parties, left for record September 6, 1887, and duly recorded. By this lease the defendant rents the first floor to the plaintiff and his partner for a term of five years, commencing on the first day of October, 1887, and ending October 1, 1892, for the sum of $1,500 a year, to be paid in equal instalments of $125, on the first day of every month, and containing a provision in these words : "With the privilege of five years more at the same rates." .Plaintiff, during the term, seems to have succeeded to the business and interest of his partner in the lease, and, at the end of five years, he elected to take it five years more, and after that period had partially elapsed, and while he was in possession of the premises, and carrying on the business of manufacturing and selling trunks therein, he began the correspondence which is introduced in evidence in this case, with a view of securing this place of business after the expiration of his term October 1, 1897. This correspondence began on the twenty-eighth of December; 1893, and I refer to an extract from it, which we conclude has some bearing upon the question whether there was a contract. On the twenty-eighth of December, 1893, the plaintiff wrote to the defendant, and among other things said to her this :

"My time here runs something more than three years yet, but I will not want to wait until the time is up before knowing what I am to do. . If you are willing to extend the time for ten years longer from the expiration of the present lease, at the same rates, please let me know at once, and I will soon decide between that and another prospect I have. We might make terms on the whole building, and save you the annoyance such as you have had with some upstairs tenants."

On January 5, 1894, the defendant wrote to the plaintiff the following in regard to that proposition :

"In regard to your proposal, or plan to take the whole building, 317 Summit street, I would be pleased with the idea if you think you can pay me my price. I have had an offer of the same sort at $2,000, and did not encourage the party, because you held the lease. It was a great temptation, and only $100 more than I have been and am now getting. If you will agree to these terms, I would prefer you should have it."

A fire occurred which damaged this property in some respects, and interrupted the correspondence to some extent ; but on February 25th the defendant wrote to the plaintiff inquiring why she didn't hear from him about the lease, and making some other inquiries. On February 27th, and before he had received that letter, he wrote her another, devoted principally to a proposition upon his part to lease the ground upon which this building stood, for some long term of years, and argued that it would be beneficial to both parties, and under such a lease he would put up a new building. But having received her letter of the 27th, on March 1, he addressed another to her, in which he says this :

"Now about renewing the lease after my present one expires, (I want to make it plain to you), I received your letter of January 5, '94, containing your proposition of $2,000 for the entire building on another ten year lease. I want to say I will take it on those terms, unless we can mutually agree on the other plan which I suggested in my last letter yesterday."

Then he goes on to repeat it. On March 6, she wrote him a letter, in answer to this one to which I have referred, and perhaps the one pre-

ceding, in which she dismisses entirely his proposition to lease the ground, but suggested to him that he take a five year lease of the whole property, beginning the following April, which would be three years and six months before the expiration of his then existing lease. March 13, 1894, he replies to this letter in a long and somewhat rambling letter but says in the course of it the following :

"In conclusion I will say that my letter to you of December 28, 1893, asked for terms on an extension of ten years after the present lease expires. Your answer of January 5, '94, made the proposition of $2,000 per year for the whole building. I have already written you accepting it on those terms. If in the future you wish to consider the other plan, it can be discussed at any time."

That would have been a very good place to stop with the correspondence, but it kept on. She follows with two other letters in which she makes two other propositions, which I need not stop to refer to. April 6, 1894, he undertakes to answer these, and in the course of the answer says:

"I don't see that I need say anything more about leases. As I have repeatedly said, you in your letter last January, made your proposal to lease me the whole building at $2,000 per year, for another ten years after my present lease on this room expires. I have accepted that offer, which I consider binding on myself as well as you. I am disposed to do exactly as I agree to do, and consider myself bound here till October, 1907."

Then he follows with matters not relevant to the question I am discussing, and then says:

"If it will settle the matter, though, I will take third floor off your hands at $100 per year, beginning May 1, and run to October 1, 1897; and from then, you have agreed to lease me the whole building at $2,000 per year for ten years."

May 2, 1894, she replies to this letter, with some causes for delay. She says as follows :

"I think I understand what you want to do and what you want me to do. You are willing, you say, to take my offer of paying me $2,000 for the whole building, but not willing to commence doing so until the present lease expires. I wrote you requesting you to grant me a new lease, taking the whole building at those terms, commencing the first of May, 1894. I thought you would be willing to do this after you knew you were keeping me from making $2,000 on the store alone. For you can readily see had my store been empty this spring, I would have gotten $2,408. But as you are willing to pay the $100 per year on the third story, commencing May 1, 1894, I accept your offer. This is as fair as I can expect or wish."

There is much more in that letter, and there are many more letters running over the period between May, 1894, and October, 1897. Out of them all we extract no agreement to rescind or set aside any previously made agreement, but upon the defendant's part there was a continual series of different propositions, all of which were substantially ignored, by the plaintiff insisting that he had made his agreement, and insisting that she should execute the lease in pursuance of that, and mailing to her at different times forms of leases that he had drawn up, which she neglected, and finally refused to sign or execute. His time in the lower store expired, and he began on his new term. There was no notice to quit at the expiration of his ten years. He continued doing

business on the first floor, and more than that, she gave orders to all her tenants in writing to pay their rents to the plaintiff for their future leases after October 1, 1897, but refused to make any written lease to the plaintiff. He also began and continued the payment of $100 per year for the third floor from May 1, 1894, to October 1, 1897, which she received and kept. .

We think it fairly appears from this correspondence that this defendant agreed to lease this property to the plaintiff, in writing, for ten years, commencing on the first day of October, 1897, the rent and the other conditions thereof to be as in the former lease. The basis of all this correspondence is the proposition of the plaintiff that he would make only that kind of a lease, upon the same rates as contained in his present existing lease.

It is said that the word "rates" does not apply to the terms; but it will be noticed that the parties in the lease which was executed in August, 1887, provided that the term should be five years, but that there should be a renewal for five years longer, at the option of the lessee, upon the same rates. What construction would the court give to that expression ? Clearly the parties meant the same terms and conditions. The terms and conditions which are applicable to the present lease are not indefinite at all, nor indeterminate. They are the same, if based upon plaintiff's proposition first made, as in the old lease, excepting so far as those conditions and terms have been by the parties modified. They did modify it; first, as to the term, which, instead of being for five years with the privilege of five more is for ten absolutely second, the rental and amount of premises rented, instead of the first story, the three stories of the building are rented, and instead of $1,500 a year, the amount of rent in the first lease, $2,000 a year is stipulated for. One provision appears in these letters, and the correspondence indicates, that it was understood by the parties that the lessee should have the privilege of subletting both the floors that he was not occupying with his business. His object in renting it, as he expressed it in his letter to her was, that she might not be bothered with a number of tenants, and might look to him for the rent wholly. Clearly he indicated that he desired to sublet the other two floors. So that condition is made plain from the necessities of the case and the character of the contract that the parties entered into, that he should have the privilege of subletting the second and third floors.

We think it seems clear that the plaintiff should be entitled to specific performance of this contract—that is, it should be decreed that defendant should execute a lease for ten years from the first of October, 1897, at an annual rental of $2,000 per year, payable in equal instalments of $166.67 on the first day of each month ; that he should have the privilege of subletting the second and third floors ; and the other terms and conditions, many of them only incidental to the contract, should be the same as in the original lease.

The case was somewhat hurriedly submitted to this court, and after or during the argument it was suggested by the plaintiff that he had evidence that he desired to offer claiming damages of the defendant for her failure to execute her lease on time. No evidence was submitted. However, we will decide the case as if the plaintiff had proved, or offered to prove, what he claims he should be entitled to prove. We do not think this is a case for damages. Plaintiff's agreement which we have found to have existed was certainly made as early as May 6, or within a day or

two after that, 1894. It was an agreement that the defendant should execute to him a lease of this property for ten years. Within a reasonable time thereafter, if she failed, or neglected, or refused to execute it, he could have brought his action to compel her. He was not required to wait until possession could have been delivered, or until the lease was to take effect; for the object and purpose, as he says in his correspondence, of making this agreement, was that he might know some time in advance that he was to have the premises. So he might have begun this action long before the first day of October, 1897. But he waited, however, until long after that time, and at that time, as I have stated, the possession of the entire building was turned over to him. It is said now as a reason why he suffered damages that he had no written lease to rely upon, and therefore he could not contract with other tenants to take the other part of the premises that he did not occupy. He had this contract, which either was or was not a contract good for ten years, or good for a lease for the term of ten years, and if he relied upon it, he could proceed as if he did rely upon it. He could not have suffered any damage by reason of the failure of defendant to execute a lease, since defendant had given to him possession of the entire premises. Had she refused to give him possession, then there would be some ground for his claim that he had been damaged. We see none in this case, but hold that he is not entitled to recover for damages. The entry will be accordingly.

*J. M. & W. F. Brown*, for plaintiff.
*Scribner. & Waite*, for defendant.